UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONALD DIAL,

        Petitioner,

v.                                 Case No. 3:20-cv-566-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Donald Dial, an inmate of the Florida penal system, initiated this action on May 31, 2020, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] Dial challenges a 2016 state court (St. Johns County, Florida) judgment of conviction for armed robbery. He raises six grounds for relief. See id. at 4−15. Respondents have submitted a memorandum opposing the Petition, in which they argue that the Petition is untimely filed. See Response to Petition (Response; Doc. 14). They also

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

submitted exhibits. <u>See</u> Response Ex. 1. Dial filed a Reply. <u>See</u> Reply to Petitioner's 28 U.S.C. § 2254 (Reply; Doc. 15). This action is ripe for review.

## II. Relevant Procedural History

On April 8, 2016, the state charged Dial by Amended Information with one count of armed robbery. Response Ex. 1 at 5. Dial proceeded to trial, and on April 29, 2016, a jury found him guilty as charged in the Amended Information. <u>Id.</u> at 1134−35. On May 27, 2016, the trial court adjudicated Dial as a prison releasee reoffender and sentenced him to a term of life imprisonment. <u>Id.</u> at 1058, 1060.

On direct appeal, Dial, with the assistance of appellate counsel, filed an initial brief arguing that the trial court erred in failing to instruct the jury regarding the consideration of Dial's trial testimony. <u>Id.</u> at 1089−95. The state filed an answer brief. <u>Id.</u> at 1099. The Fifth District Court of Appeal (Fifth DCA) per curiam affirmed Dial's conviction and sentence without a written opinion on April 4, 2017. <u>Id.</u> at 1119. The mandate issued on April 28, 2017. <u>Id.</u> at 1121.

Dial then filed three motions for postconviction relief in state court. Response Ex. 1 at 1123−29, 1190−95, 1203−38. He first filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on March 2, 2018. <u>Id.</u> at 1123−29. The trial court summarily denied relief. <u>Id.</u> at 1139−42. On June 26, 2018, the Fifth DCA per curiam affirmed without opinion the trial

court's denial, and on July 20, 2018, it issued the mandate. <u>Dial v. State</u>, 248 So. 3d 1159, 1159 (Fla. 5th DCA 2018).[2] On May 8, 2018, Dial filed a second motion to correct illegal sentence under Rule 3.800(a). Response Ex. 1 at 1190−95. The trial court found the allegations raised in the second Rule 3.800(a) motion were not cognizable and dismissed the motion. <u>Id.</u> at 1199−1201. ⏐

On December 20, 2018, Dial filed his third motion for postconviction relief, this time under Florida Rule of Criminal Procedure 3.850, alleging trial counsel was ineffective when he failed to: object to the Amended Information and the jury instructions read at trial (ground one); renew and preserve for appeal a race-based challenge to the state's use of a peremptory strike during jury selection (ground two); object when the jury was instructed on an element not charged in the Amended Information (ground three); and ensure the jury was properly instructed regarding Dial's decision to testify at trial (ground four). <u>Id.</u> at 1203−38. The trial court summarily denied relief on all grounds. <u>Id.</u> at 1252−69. On March 24, 2020, the Fifth DCA per curiam affirmed the trial court's denial without a written opinion, <u>id.</u> at 1397, and on April 17, 2020, it issued the mandate, <u>id.</u> at 1399.

---

[2] The Court takes judicial notice of Petitioner's state court dockets. <u>See Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

### III. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other

> collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The parties dispute the timeliness of this Petition. Respondents contend the Petition is untimely filed, arguing the May 2018 Rule 3.800(a) motion was not a tolling event. According to Respondents, because the trial court found the claims were only cognizable under Rule 3.850, the lack of oath rendered the May 2018 motion improperly filed for tolling purposes. The Court finds this argument to be without merit.

Despite Petitioner's failure to raise this claim in a proper procedural manner before the trial court, he properly filed the motion. The Supreme Court makes clear that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). Determining if a petitioner properly filed an application is a separate issue from whether the claims themselves are meritorious or free from procedural bars. Id. at 9. Under Artuz, "properly filed" means delivered to the proper person, within the applicable time, with the required filing fees, in a form that enables the court to consider the motion. Id. at 8.

The Eleventh Circuit later applied <u>Artuz</u> to a situation similar to the circumstances before the court here and concluded that a Rule 3.800(a) motion tolled the limitations period even though the state court dismissed it because the petitioner brought it pursuant to the wrong statutory vehicle. <u>Delancy v. Fla. Dep't of Corr.</u>, 246 F.3d 1328, 1331 (11th Cir. 2001), <u>overruled on other grounds</u>, <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 906 F.3d 1339, 1350, 1353 (11th Cir. 2018). In so finding, the Eleventh Circuit instructed that a court should not look beyond the face of the Rule 3.800(a) motion to determine whether petitioner properly filed it for tolling purposes. <u>Id.</u> at 1330−31. Instead, the determination on whether a petitioner properly filed a motion should center on whether it met state procedural and filing requirements. <u>Id.</u> at 1330−31.

Dial submitted to the state court a Rule 3.800(a) motion in May 2018. Respondents contend this motion did not toll his one-year limitation period, resting their argument on Dial's failure to properly file his motion pursuant to Florida procedural requirements. While the trial court discussed in its order the fact that Dial's claims would be cognizable in a Rule 3.850 motion, it is evident from the trial court's order that it did not construe his motion to be a Rule 3.850 motion. Instead, the trial court dismissed the motion and gave Dial an opportunity to file a Rule 3.850 motion. Dial's filing remained a Rule 3.800(a) motion. And Florida Rule of Criminal Procedure 3.800(a) does not require an oath. Fla. R. Crim. P. 3.800(a). Thus, despite the trial court's finding

that the claims contained within the May 8, 2018 Rule 3.800(a) motion were not cognizable, Dial still properly filed his Rule 3.800(a) motion with the trial court. See Artuz, 531 U.S. at 9; Delancy, 246 F.3d at 1331. Based on this reasoning, the Court finds this action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318−19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Dial's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the
> unexplained decision to the last related state-court
> decision that does provide a relevant rationale. It
> should then presume that the unexplained decision
> adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be
rebutted by showing that the higher state court's adjudication most likely
relied on different grounds than the lower state court's reasoned decision, such
as persuasive alternative grounds that were briefed or argued to the higher
court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars
relitigation of the claim unless the state court's decision (1) "was contrary to,
or involved an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States;" or (2) "was based on
an unreasonable determination of the facts in light of the evidence presented
in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97−98.
The Eleventh Circuit describes the limited scope of federal review pursuant to
§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in Williams v. Taylor,
> 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000),
> § 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable application"
> clause. The "contrary to" clause allows for relief only
> "if the state court arrives at a conclusion opposite to
> that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102−03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

12

> procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).
[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the

16

> *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Dial contends his trial counsel was ineffective for failing to object to the deficient Amended Information because it did not allege possession of a firearm. Petition at 4. Dial further maintains trial counsel failed to object to the trial court's subsequent jury instruction on possession of a firearm. <u>Id.</u> Dial raised a substantially similar claim in ground one of his

Rule 3.850 Motion. Response Ex. 1 at 1211−17. The trial court denied the claim, stating in pertinent part:

> The body of the Amended Information under which Defendant was charged in the instant case provided as follows: COUNT I: DONALD EMANUEL DIAL, on or about October 22, 2014, in the County of ST. JOHNS and State of Florida, by force, violence, assault, or putting in fear, did knowingly take away jewelry, of some value, from the person or custody of MITZI CONLEY and/or CORAL ELYSE ROLAND, with the intent to permanently or temporarily deprive MITZI CONLEY and/or CORAL ELYSE ROLAND or any person not the defendant(s) of the property, or did aid, abet, counsel, hire, or otherwise procure another to by the force, violence, assault, or putting in fear, knowingly take away jewelry, of some value, from the person or custody of MITZI CONLEY and/or CORAL ELYSE ROLAND, with the intent to permanently or temporarily deprive MITZI CONLEY and/or CORAL ELYSE ROLAND or any other person not the defendant(s) of the property; and in the course of committing the robbery a firearm was used, contrary to Florida Statutes 812.13(2)(a) and 812.13(1) and 775.087(2) and 777.011 (1 DEG FEL, PEL)[.]

> The Amended Information thus properly charged Defendant with all requisite elements of robbery with a firearm pursuant to Fla. Stat.§ 812.13(2)(a). The portion of the body of the Information providing, "and in the course of committing the robbery a firearm was used," sufficiently apprised Defendant that he was being charged with the element of use of a firearm during the commission of the robbery.

> . . . .

> Based on the portion of the record to which Defendant cites in support of his claim, it is apparent to the Court that Defendant has misinterpreted the State's concession that the Information didn't charge Defendant with actual possession of the firearm used in the commission of the robbery to invoke the 10-20-life provisions of Fla. Stat. § 775.087(2). In the instant case, Defendant was charged under the "principal theory" with robbery with a firearm

18

pursuant to Fla. Stat. § 812.13(2)(a). Id. To be convicted of robbery with a firearm under s. 812.13(2)(a), a defendant does not need to have actually possessed the firearm used in the course of committing the robbery; rather, a defendant may be properly charged and convicted with this offense merely by virtue of participating as a principal in a robbery in which a firearm was used. Dotel v. State, 175 So. 3d 830, 832 (2015); Demps v. State, 649 So. 2d 938, 938 (Fla. 5th DCA 1995) (citing Poiteer v. State, 627 So. 2d 526 (Fla. 2d DCA 1993) and Freeny v. State, 621 So. 2d 505 (Fla. 5th DCA 1993). Here, the State acknowledged the charging language did not subject Defendant to the 10-20-life statute because the Information did not charge Defendant with actually possessing the firearm in question; however, Defendant nonetheless was properly charged and convicted as a principal to Robbery with a Firearm.

Defendant was not sentenced under the 10-20-life statute for possessing a firearm during the crime. Therefore, the fact the Information did not allege he possessed a firearm is of no moment. Defendant's sentence was enhanced because the offense of which he was properly convicted-Robbery with a Firearm under s. 812.13(2)(a)-subjected him to a mandatory life sentence as a prison releasee reoffender pursuant to Fla. Stat. § 775.082(9)(a)(3)(a).

Response Ex. 1 at 1254−58 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Id. at 1397.

To the extent that the Fifth DCA decided this issue on the merits,[6] the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication

---

[6] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Dial is therefore not entitled to relief on the basis of this claim.

That said, even if the state court's adjudication of this claim is not entitled to deference, Dial's <u>Strickland</u> claim lacks merit. The Amended Information charged Dial with armed robbery with the use of a firearm based on the principal theory. Response Ex. 1 at 5. Trial testimony revealed Dial and his co-defendant committed the armed robbery, with one co-defendant acting as a getaway driver while the other co-defendant entered the jewelry store with a firearm. <u>Id.</u> at 433, 442, 449, 455, 675.

Under Florida law, a defendant may be convicted as a principal of armed robbery without actual possession of the firearm himself. <u>See</u> <u>Freeny v. State</u>, 621 So. 2d 505, 506 (Fla. 5th DCA 1993) (stating "possession of a firearm by a co-defendant is sufficient to convict a defendant of armed robbery, pursuant to the principal theory. . . ."); <u>Kenny v. State</u>, 693 So. 2d 1136, 1136–37 (Fla. 1st DCA 1997) (recognizing that an unarmed defendant can be convicted of armed robbery under a principal theory). The jury instructions that the trial court read to the jury tracked the charge in the Amended Information, and included the instruction on principals. Response Ex. 1 at 986−1014. Thus, trial counsel

was not deficient when he failed to make the argument Dial presents here, as such an argument would have been meritless. See Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). Dial has failed to carry his burden of showing that his trial counsel's representation fell outside the range of reasonably professional assistance.

Likewise, even assuming trial counsel acted deficiently, Dial has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome would have been different if trial counsel had objected to the Amended Information and jury instruction. Because he has shown neither deficient performance nor resulting prejudice, this claim lacks merit. Relief on the claim in Ground One is due to be denied.

**B. Ground Two**

As Ground Two, Dial contends his trial counsel rendered ineffective assistance when he failed to preserve a peremptory challenge objection before the trial court accepted and swore in the jury. Petition at 6. After jury selection began, the state asked the trial court to strike a prospective juror. Id. According to Dial, trial counsel requested a race-neutral explanation for the strike, which the state provided. Id. Trial counsel objected to the explanation. Id. Dial maintains trial counsel failed to renew that objection before the trial court swore in the jury, thereby failing to preserve the issue for appeal. Id.

21

Dial raised a substantially similar claim in his Rule 3.850 Motion. Response Ex. 1 at 1217−21. The trial court denied the claim, stating in pertinent part:

> The record reflects that Defendant's counsel properly raised a challenge to the State's peremptory strike of Ms. Boykin in accordance with the requirements set forth in Melbourne[.]
>
> . . . .
>
> Defendant correctly asserts that jury selection commenced on April 18, 2016, before Judge Howard McGillin, and the jury was not sworn until April 27, 2016, before Judge Dennis Craig. Defendant further correctly alleges that counsel did not renew his peremptory challenge immediately prior to the jury being sworn. However, counsel expressly indicated to Judge Craig that he remained dissatisfied with Judge McGillin's determination as to the legitimacy of the State's race-neutral explanation regarding Ms. Boykin when jury selection resumed [.]
>
> . . . .
>
> Thus, counsel expressly indicated to Judge Craig that he persisted in his disagreement with the genuineness of the race-neutral reason previously accepted by Judge McGillin for striking Ms. Boykin. Accordingly, it is not reasonable to believe defense counsel abandoned the objection; to the contrary, because defense counsel specifically indicated he wished to place the objection on the record before Judge Craig, the record supports that both the Court and the State were apprised that counsel intended to preserve the objection. See e.g., Scott v. State, 920 So. 2d 698, 700 (Fla. 3d DCA 2006) ("In the instant case, the issue is preserved despite defense counsel's failure to specifically renew his objection before accepting the panel. The record reveals that it was clear to the trial court and the State that defense counsel was not abandoning his objection. . . . In these specific circumstances, 'neither the state nor the court was misled into a belief that the voir dire issue was being abandoned by failure to renew it.'")

(quoting <u>Ingrassia v. State</u>, 902 So. 2d 357, 359 (Fla. 4th DCA 2005) (further internal citations omitted)).

It must also be noted that Defendant never even attempted to raise on direct appeal the issue that the Court allegedly improperly permitted the State's peremptory strike of Ms. Boykin. Thus, Defendant's allegation that he was unable to successfully challenge the Court's ruling on the objection on appeal because it had not been properly preserved is unsubstantiated. Defendant merely speculates that the appellate court would have found the objection had not been properly preserved, which is insufficient to warrant relief. <u>Gore v. State</u>, 964 So. 2d 1257 (Fla. 2007) ("[P]ostconviction relief cannot be based on speculative assertions." (quoting <u>Jones v. State</u>, 845 So. 2d 55, 64 (Fla. 2003)).

Response Ex. 1 at 1262−65 (record citations omitted). The Fifth DCA per curiam affirmed the denial of relief without a written opinion. <u>Id.</u> at 1397.

To the extent that the Fifth DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As a result, Dial is not entitled to relief on the basis of this claim.

Even if the state court's adjudication of this claim is not entitled to deference, Dial's ineffectiveness claim is baseless. Jury selection began on

April 18, 2016, but the trial court did not swear in the jury until April 27, 2016. Id. at 43−185, 392. After making the initial objection on April 18, 2016, trial counsel again raised his concerns about the genuineness of the state's race-neutral reason on April 26, 2016, before the jury was sworn. Id. at 43, 174−77, 187, 191−92, 206, 207−08. While the circumstances of the jury selection in this case were unusual−in that it took place over several days and before two different judges−trial counsel made clear on the record after his initial objection that he disagreed with the race-neutral reason provided by the state as to this specific juror. Id. Trial counsel's action of alerting the trial court a second time that he remained concerned about the genuineness of the state's race-neutral reason before the trial court administered the jury oath served as a renewed objection. Davis v. Sec'y Dep't of Corr., 341 F.3d 1310, 1315 (11th Cir. 2003) (citing Joiner v. State, 618 So. 2d 174, 176 (Fla. 1993)) ("Under Florida law, simply objecting to the state's possibly discriminatory strikes, and then countering any purportedly race-neutral explanation given by the prosecution, does not suffice to preserve a Batson[7] claim for appeal. Rather, trial counsel must press the already rejected challenge a second time at the conclusion of voir dire, either by expressly renewing the objection or by accepting the jury pursuant to a reservation of this claim."); see also Melbourne

---

[7] Batson v. Kentucky, 476 U.S. 79 (1986).

24

v. State, 679 So. 2d 759, 765 (Fla. 1996). That the objection occurred the day before the jury took their oath is of little consequence. Thus, trial counsel was not deficient.

Nevertheless, even assuming deficient performance by trial counsel, Dial has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome would have been different if trial counsel had made a second objection on April 27, 2016, right before the trial court administered the oath to the jury. Further, the basis of Dial's prejudice argument is that trial counsel did not preserve the error for direct appeal. The record shows, however, that Dial never tried to raise this issue on appeal. Response Ex. 1 at 1067–97. And Dial relies only on speculation for the proposition that the appellate court would have found the issue unpreserved had he raised the claim on direct appeal. Habeas relief cannot rest on speculation. Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (concluding speculation is "insufficient to carry the burden of a habeas corpus petitioner.") Because he has shown neither deficient performance nor resulting prejudice, the claim lacks merit. Relief on the claim in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Dial maintains trial counsel rendered ineffective assistance because he failed to object to the trial court instructing the jury on

an element not charged in the Amended Information; specifically, the element of actual possession of a firearm. Petition at 8. Dial further contends trial counsel was ineffective for failing to object to the state pursuing the uncharged element of possession of a firearm during the trial. Id. Dial raised a substantially similar claim in his Rule 3.850 Motion. Response Ex. 1 at 1221−26. The trial court denied relief, stating in pertinent part:

> This Court has already engaged in a lengthy analysis of this issue in Ground One, supra, within which it determined that the Defendant was properly charged, and the jury appropriately instructed, regarding the element of use of a firearm during the commission of the robbery in question, in accordance with Fla. Stat. § 812.13(2)(a). The Court further observes that insofar as Defendant asserts the jury was instructed specifically with respect to Defendant's possessing a firearm, the record reflects the jury was merely instructed on the use of a firearm during the commission of the robbery. Based on the aforementioned reasoning, Ground Three will likewise be summarily denied.

Response Ex. 1 at 1267. (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Id. at 1397.

To the extent that the Fifth DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

26

presented in the state court proceedings. Dial is therefore not entitled to relief on the basis of this claim.

Yet even if the state court's adjudication of this claim is not entitled to deference, Dial's claim lacks merit. As explained above, a defendant may be convicted as a principal of armed robbery without actually possessing the firearm himself. See Freeny, 621 So. 2d at 506; Kenny, 693 So. 2d at 1136–37. The state charged Dial with armed robbery pursuant to the principal theory. Response Ex. 1 at 5. Consistent with the charges filed, the state did not include the actual possession of a firearm enhancement in the Amended Information because it is not required for a principal theory. Instead, the charging document asserted that a firearm was used during the robbery. Id. Trial counsel was not deficient for failing to put forth the meritless argument Dial raised here as, for the reasons explained above, actual possession is not required for this charge. See Freeman, 536 F.3d at 1233. As a result, Dial has failed to carry his burden of showing that his trial counsel's representation fell outside the range of reasonably professional assistance.

Even if trial counsel was deficient, Dial has not shown any resulting prejudice. Evidence adduced at trial shows that on October 22, 2014, Dial and his co-defendant robbed a Zales jewelry store in Saint Augustine, Florida. The store employees testified that a person entered the store wielding a gun and demanded jewelry. Response Ex. 1 at 433, 442, 449. Dial and his co-defendant

27

stole ninety-eight rings worth about $192,000. Id. at 675. The general manager of the Saint Augustine Outlets, where the Zales store is located, witnessed a white vehicle sitting in the fire lane outside the store. Id. at 453. The individual who had entered the store with a gun exited the store after taking the rings and entered the passenger side of the waiting vehicle. Id. at 455. The general manager reported the vehicle's partial tag number to law enforcement. Id. at 456.

The white car used in the armed robbery belonged to a friend of the co-defendant who loaned him the vehicle on the morning of the robbery. Id. at 537–40, 651–52. Law enforcement traced the co-defendant to his place of employment and learned Dial was his partner at work. Id. at 652. A search of Dial and the co-defendant's work truck produced a briefcase that contained evidence pointing to pawned rings at various pawn shops. Id. at 652–53.

Police investigated associates of Dial, including Pamela Walker, the mother of his child, and discovered that she also pawned rings. Id. at 655–56. Walker testified that following the robbery, Dial called her from the co-defendant's cell phone and asked her to pick him up at a Publix. Id. at 468–70. Walker picked-up Dial and the co-defendant and heard them discussing Zales in the back seat. Id. at 471. Dial gave Walker a ring that she later pawned. Id. at 472. Dial's cousin, Brian Dempsey, was in Walker's car when she met Dial and his co-defendant. Id. at 470, 492–93. Dial gave Dempsey jewelry that he

pawned as well. Id. at 473, 495−96. Dempsey recalled Dial arriving with the co-defendant at the Publix in a white vehicle. Id. at 493. Dempsey further testified that Dial said he obtained the jewelry after committing a robbery in Saint Augustine. Id. at 500−01.

Cell site location data showed that Dial and his co-defendant communicated on the morning of the robbery. Id. at 594−95. Their phones tracked south towards the robbery location and the co-defendant's phone showed activity near the Zales store at the time of the robbery. Id. at 610, 660. Following the robbery, the co-defendant's phone called Walker while near the Zales store. Id. at 601. Dial's phone traveled north towards Jacksonville after the robbery, and then to various pawn shop locations. Id. at 661. The rings Dial, Walker, and Dempsey pawned matched the rings stolen from the Zales store. Id. at 675−78, 734−38, 740−41.

Considering the evidence presented at trial showing Petitioner's participation as a principal, Dial has not shown that a reasonable probability exists that the outcome would have been different if trial counsel had objected to the Amended Information and instruction. Because he has shown neither deficient performance nor resulting prejudice, the ineffectiveness claim is baseless. Relief on the claim in Ground Three is due to be denied.

## D. Ground Four

As Ground Four, Dial asserts trial counsel was ineffective for failing to secure the standard jury instruction about a defendant becoming a witness. Petition at 10. Dial contends that by failing to give this instruction, the trial court deprived him of a fair trial because the jury was not instructed to fairly weigh and consider his trial testimony. Id.

Dial raised this claim in his Rule 3.850 motion. Response Ex. 1 at 1227−34. The trial court denied the claim, finding:

> On direct appeal, Defendant's appellate counsel exhaustively briefed and argued this ground as the singular argument on appeal. Appellate counsel argued that the failure to "instruct the jury with respect to the portion of Standard Jury Instruction 3.9 regarding the defendant in this case becoming a witness and the rules of consideration of his testimony" constituted fundamental error. Id. at 19. The State asserted in its answer brief that the portion of Standard Jury Instruction 3.9 wherein the jury is instructed to "apply the same rules to consideration of [the defendant's] testimony" as it applied "to the testimony of the other witnesses" is redundant, because the jury had been properly instructed on the considerations for evaluating witnesses' testimony generally. The State consequently argued that the failure to include this redundant portion of Standard Jury Instruction 3.9 constituted harmless error, rather than fundamental error. Because Defendant raised this exact claim, on direct appeal, and the appellate court affirmed Defendant's conviction, he is procedurally barred from attempting now to re-litigate precisely the same claim merely by couching it in terms of ineffective assistance of counsel for "failing to ensure the jury was properly instructed." Troy v. State, 57 So. 3d 828, 838 (Fla. 2011) ("A defendant may not circumvent the procedural bar to his claims by raising conclusory allegations of ineffective assistance of counsel.") (Internal citations omitted). Consequently, Ground Four will be denied as procedurally barred.

Response Ex. 1 at 1268. Dial appealed and the Fifth DCA affirmed the trial court's order without issuing a written opinion. Id. at 1397.

If the last state court to examine a petitioner's claim explicitly finds that the claim is barred because the petitioner failed to follow state procedural rules, and that procedural bar provides an adequate and independent state ground for denying relief, federal review of the habeas petitioner's claim is barred. See Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). Stated otherwise, federal courts may not address claims that "have been held to be procedurally defaulted under state law." Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)); see also Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

! Here, the sole issue raised on Dial's direct appeal was whether the trial court fundamentally erred by failing to instruct the jury about Dial becoming a witness at trial. Response Ex. 1 at 1067−97. The state filed an answer brief arguing that the omitted instruction was redundant to the instruction given about general witness testimony and maintained nothing in the jury instructions advised the jury not to apply the general witness standards to Dial's testimony. Id. at 1104. The state acknowledged that it was error for the

instruction at issue to be omitted, but that it was a harmless error, not a fundamental one. Id. Thus, when the Fifth DCA affirmed Dial's judgment and sentences, it is fair to assume that it adjudicated the merits of Dial's claim and found that exclusion of this instruction did not result in an unfair trial.

! On collateral review, the state court declined to consider the ineffective assistance of counsel claims at issue because the allegations for which Dial's Strickland claim were based were previously found to lack merit on his direct appeal. The state court's ruling did not alternatively address the merits of the claim, and the case that the trial court cited to support its ruling was similar to the record here. In the cited case, the court found a claim of ineffective assistance of counsel procedurally barred because the primary issue supporting the claim was raised on direct appeal and rejected on the merits. See Troy v. State, 57 So. 3d 828, 838 (Fla. 2011) ("A defendant may not attempt to circumvent the procedural bar to his claims by raising conclusory allegations of ineffective assistance of counsel.").

The state court's determination that Dial's claim of ineffective assistance based on the failure to assure the jury was properly instructed is procedurally barred. And Dial has failed to show that the adjudication of the claim was contrary to clearly established law, involved an unreasonable application of clearly established law, or resulted from an unreasonable determination of the

facts in light of the evidence presented. Thus, he is not entitled to relief on this claim.

!    Even if this claim were not procedurally barred, rejection of this ground is still appropriate because Dial cannot demonstrate the required prejudice. At issue is the omission of an instruction that reads, "[t]he defendant in this case has become a witness. You should apply the same rules to consideration of [his] testimony that you apply to the testimony of the other witnesses." Fla. Std. Jury Instr. (Crim.) 3.9. Dial maintains that because the jury never heard this instruction, he was somehow deprived of the right to have the jury fairly weigh and consider his trial testimony. The trial court, however, instructed the jurors that it was up to them to decide what evidence was reliable or unreliable. Response Ex. 1 at 1005. The trial court also described several factors to consider in evaluating the testimony of witnesses and told the jurors that they "may believe or disbelieve all or any part of the evidence or the testimony of any witness." Id. at 1005−08. In light of these instructions, it is unreasonable to think the jury did not afford Dial's testimony with these same considerations. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

As already discussed, on direct appeal, the Fifth DCA affirmed Dial's judgment and conviction and rejected his claim that the omission of this instruction amounted to fundamental error. In doing so the state court found

there was no possibility that the outcome of Dial's trial would have been different had this instruction been included. See Floyd v. State, 850 So. 2d 383, 403 (Fla. 2002) ("Fundamental error is that which 'reaches down into the validity of the trial itself to the extent that a verdict . . . could not have been obtained without [that] error.'") (internal citation omitted). Likewise, Dial cannot demonstrate that but for trial counsel's failure to request this instruction, the outcome of his trial would have been different. As such, relief on the claim in Ground Four is due to be denied.

### E. Ground Five

As Ground Five, Dial opines trial counsel provided ineffective assistance when he failed to move to suppress the historical cell site information because law enforcement obtained it without a warrant. Petition at 12. Dial maintains that when law enforcement obtained the cell site location information (CSLI) through a subpoena to the mobile carrier, it violated his constitutional rights because it did not satisfy the probable cause requirements of a warrant. Id.

Dial failed to present this claim to the state court either on direct appeal or on collateral review. Response Ex. 1 at 1067−97, 1123−29, 1190−95, 1203−38. Therefore this claim is unexhausted and procedurally defaulted. See O'Sullivan, 526 U.S. at 845. In an effort to overcome the procedural bar, Dial relies on Martinez v. Ryan, 566 U.S. 1 (2012), and argues that his lack of postconviction counsel constitutes cause to overcome the procedural bar.

Petition at 12. The Eleventh Circuit has explained the holding of <u>Martinez</u> as

follows:

> In <u>Martinez</u>, the U.S. Supreme Court enunciated a
> narrow exception to the general rule that the lack of
> an attorney or attorney error in state post-conviction
> proceedings does not establish cause to excuse the
> procedural default of a substantive claim. 566 U.S. at
> 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court,
> however, set strict parameters on the application of
> this exception. It applies only where (1) state law
> requires a prisoner to raise ineffective-trial-counsel
> claims during an initial collateral proceeding and
> precludes those claims during direct appeal; (2) the
> prisoner failed to properly raise ineffective-trial-
> counsel claims during the initial collateral proceeding;
> (3) the prisoner either did not have counsel or his
> counsel was ineffective during those initial state
> collateral proceedings; and (4) failing to excuse the
> prisoner's procedural default would result in the loss
> of a "substantial" ineffective-trial-counsel claim. <u>Id.</u> at
> 14, 132 S.Ct. at 1318; <u>see also</u> <u>Arthur v. Thomas</u>, 739
> F.3d 611, 629 (11th Cir. 2014) (setting forth the
> <u>Martinez</u> requirements).

<u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, 851 F.3d 1158, 1164 (11th Cir. 2017). A

claim is substantial if the petitioner demonstrates it "has some merit."

<u>Martinez</u>, 566 U.S. at 14.

Upon consideration of the record, the Court determines Dial has not

shown that the underlying ineffective assistance of trial counsel claim is

substantial. Pursuant to the provisions of the Stored Communications Act, the

government may obtain records from a cellular service provider based on a

showing of "reasonable grounds" that it believes the records are "relevant and

material to an ongoing investigation." 18 U.S.C. § 2703(d). However, in 2018, after Dial's trial, the United States Supreme Court held that to obtain CLSI law enforcement must have more than the reasonable grounds required for a subpoena; law enforcement must show probable cause and obtain a warrant. Carpenter v. United States, 138 S. Ct. 2206, 2221 (2018) ("Consequently, an order issued under Section 2703(d) of the Act is not a permissible mechanism for accessing historical cell-site records. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one— get a warrant.").

Testimony at trial revealed the St. John's County Sheriff's Office provided the Florida Department of Law Enforcement with the CLSI in November 2015 for mapping purposes. Response Ex. 1 at 545−46. As noted above, the trial court sentenced Dial based on the jury's verdict in 2016. Id. at 1058, 1144. It is unreasonable to task trial counsel with the responsibility to move to suppress this information because law enforcement obtained it with a subpoena instead of warrant, given that the Supreme Court did not determine that a warrant was required until after Dial's trial and conviction. The Court cannot find trial counsel deficient for failing to predict a change in the law. Thompson v. Wainwright, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986) ("[D]efendants are not entitled to an attorney capable of foreseeing the future

36

development of constitutional law."). As a result, trial counsel was not deficient for failing to move to suppress the CLSI on this basis.

Dial also cannot demonstrate a reasonable probability that the outcome of his trial would have been different had trial counsel successfully moved to suppress the CLSI. As discussed above, law enforcement traced the vehicle leaving the Zales jewelry store to the co-defendant. Response Ex. 1 at 456, 537–40, 610. Dial worked with his co-defendant, and police found incriminating evidence in their shared vehicle. Id. at 652–53. Walker and Dempsey received rings from Dial that they pawned, and Dial told Dempsey he committed the robbery. Id. at 470, 472–73, 492–93, 495, 500-01. Rings pawned by Dial, Walker, and Dempsey matched the rings stolen from the Zales store. Id. at 675–77, 678, 734–38, 740–41. So even without the CLSI, there was sufficient evidence to support the jury's verdict.

Because Dial has shown neither deficient performance nor prejudice, the Court finds that Dial's claim is not substantial such that his failure to exhaust should be excused under Martinez. Accordingly, relief on the claim in Ground Five is due to be denied.

### F. Ground Six

As Ground Six, Dial contends the trial court fundamentally erred by failing to instruct the jury with Florida Jury Instruction 3.9 regarding the defendant becoming a witness. Petition at 14. He maintains the failure to give

the omitted portion of this instruction affected his Fifth, Sixth, and Fourteenth Amendment rights. Id.

Dial raised this claim on direct appeal. Response Ex. 1 at 1089−95, 1112−15. The Fifth DCA denied this claim and affirmed the judgment and sentence. Id. at 1119. The state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Dial is thus not entitled to relief on the basis of this claim.

Even assuming the state court's adjudication of the claim is not entitled to deference, Dial's claim lacks merit. "[I]mproper jury instructions can never be the basis for federal habeas corpus relief unless the instruction rendered the whole trial so unfair as to amount to a denial of due process." Jones v. Dugger, 888 F.2d 1340, 1343 (11th Cir. 1989); see Estelle v. McGuire, 502 U.S. 62, 71−72 (1991) ("It must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]." (internal quotations omitted)). For most alleged constitutional errors in the trial process, "a federal court reviewing a state-court determination in a habeas corpus proceeding ordinarily should apply the

'harmless error' standard, . . . namely, whether the error had substantial and injurious effect or influence in determining the jury's verdict." <u>California v. Roy</u>, 519 U.S. 2, 4−5 (1996) (internal quotations omitted); <u>see also</u> <u>Neder v. United States</u>, 527 U.S. 1, 9 (1999) (noting that a jury instruction "that omits an element of the offense does not <u>necessarily</u> render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence").

Here, the record reflects that the trial court thoroughly instructed the jury on weighing the evidence and determining the credibility of witnesses. Indeed, it instructed the jurors that it was up to them to decide what evidence was reliable or unreliable. Response Ex. 1 at 1005. The trial court also described several factors to be considered in evaluating the testimony of witnesses and told the jurors that they "may believe or disbelieve all or any part of the evidence or the testimony of any witness." <u>Id.</u> at 1005−08. The omission of the instruction in light of the full record did not render the trial fundamentally unfair given the trial court's instructions to the jury. Thus, relief on the claim in Ground Six is due to be denied

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Dial seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should

issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Dial "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Dial appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of August, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

c:
Donald Dial, # 399195
Counsel of record